UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DWIGHT TOWNER | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:04-CV-1749(JCH) |
| | : | |
| CIGNA LIFE INSURANCE COMPANY | : | |
| OF NEW YORK, AND THE PFIZER LONG | : | MARCH 7, 2006 |
| TERM DISABILITY PLAN | : | |
| Defendants, | : | |

RULING  RE: DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION
FOR JUDGMENT ON THE ADMINISTRATIVE RECORD
[DOC. NOS. 23 & 26]

The plaintiff, Dwight Towner, brings this action under the Employment

Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., against CIGNA

Life Insurance Company of New York and the Pfizer Long Term Disability Plan, which

CIGNA insures and administers (hereinafter referred to collectively as "CIGNA").

Towner claims that CIGNA wrongfully denied to him long term disability ("LTD") benefits

to which he was entitled under the Pfizer employee welfare benefit plan, and that

CIGNA failed to send to him plan documents as required by law.

CIGNA seeks summary judgment on all claims against it, arguing, inter alia, that

it acted properly within its discretion to deny disability benefits to Towner.  CIGNA

moves, in the alternative, for judgment on the administrative record.  Def. Memo. of Law

in Sup. Of Mot. for Sum. Judg., p. 2 n.1 p [Doc. No. 23].  Towner cross moves for

judgment on the administrative record, arguing, inter alia, that the evidence in the

record demonstrates his entitlement to benefits under the terms of the LTD plan.  For

the reasons set forth below, CIGNA's motion is GRANTED in part and DENIED in part,

and Towner's motion is GRANTED in part and DENIED in part.

## I.   FACTUAL BACKGROUND[1]

Towner is a resident of Groton, Connecticut and, as an employee of Pfizer, Inc., is a participant in the Pfizer LTD Plan.  The Pfizer LTD Plan is insured by CIGNA Life, which acts as the Plan's claim administrator.  Pfizer is the Plan's plan administrator. Defs' Rule 56(a)(1) Statement, ¶¶ 6-7; Id. at CIG2059-60.[2]

The Pfizer LTD Plan provides that eligible employees can receive LTD benefits, which are equal to a percentage of their annual pay, if they become disabled, as the term is defined in the plan.  The LTD Plan gives CIGNA the discretion to interpret the terms of the Plan.

Towner is sixty-one years old and has worked in the pharmaceutical industry for more than thirty-five years.  In 1995, Towner's then-employer was acquired by Pfizer, and, in 2002, Towner was transferred by Pfizer to the position of "toxicokinetic report writer," a position that involves data analysis and report writing for drug evaluation studies.  Id. at CIG0211.

Since birth, Towner has been diagnosed with congenital nystagmus, a condition characterized by involuntary eye movement, and ocular atrophy, which causes a decrease in visual function.  Id. at CIG0040, CIG0060-63.  As a result, Towner has had poor visual acuity and has worn glasses his entire life.  According to Towner, his vision

---

[1]The material facts of this case are drawn from the administrative record and are not genuinely in dispute.

[2]References to pages within the administrative record, which is attached as an exhibit to both parties' pleadings, are hereinafter cited as "CIG___".

2

has also degenerated gradually over time.  Id. at Towner Dec., CIG0057.  In 1997,

Towner had cataract surgery on his right eye and, in October 2002, underwent cataract

surgery on his left eye.

From the beginning of 2002, Towner received poor performance reviews in his

role as a report writer, and he was placed on an informal improvement plan in May and

August 2002.  Towner contended, in a response to a performance review, that his

vision problems were the cause of his performance issues.  Pfizer supplied Towner with

a 21" computer monitor and a magnifier, but his inadequate performance continued.  In

August 2003, Towner applied for, and received, short term disability benefits from Pfizer

based upon his poor vision.

In September 2003, Towner submitted an application to CIGNA for LTD benefits

based upon "his reading vision" which he described as "insufficient to permit [eight hour]

computer use." Id. at CIG0201.  Towner's application was accompanied by a Physician

Statement from Dr. Peter J. Famiglietti, who diagnosed Towner as having Ocular

Atrophy and Nystagmus, and described Towner as experiencing "decreased vision" and

"double vision."  Id. at CIG0206.  Dr. Famiglietti also wrote in the Statement that Towner

had a 40% decrease in visual acuity, a 40% decrease in ocular motility (i.e., visual

tracking), and a 20% decrease in peripheral field vision.  Id.  The Statement also

indicated that Dr. Famiglietti had seen Towner eleven times between October 2002 and

June 2003.  In a series of checkboxes, Dr. Famiglietti indicated that Towner was able to

do physical tasks such as standing and kneeling.  Id. at CIG0207.  In response to the

question, "[w]hen was patient able to go to work?," Dr. Famiglietti wrote "[n]o."  In

response to the question, "[c]an present job be modified to allow for handling with

3

impairment?," Dr. Famiglietti check the box labeled "[n]o."

In September 2003, Towner also applied for Social Security disability benefits. Dr. Famligietti wrote a letter to the Vocational Disability Examiner in support of Towner's application.  In the letter, Dr. Famligietti noted, in addition to the percentages stated above, that Towner had "best corrective visual acuity of 20/70 in each eye."  Id. at CIG0086.  On the basis of this information, Dr. Famligietti concluded that "[t]his translates to essentially 100% visual disability in each eye or 90% disability of total body the standard disability tables" and stated that "this should qualify the patient for disability benefits due to his visual condition."  Id.

In December 2003, CIGNA sent Towner an acknowledgment of its receipt of his LTD benefits application and requested some additional information from Towner and Dr. Famiglietti.  Dr. Famligietti returned a "Physical Assessment Form" to CIGNA in which he checked a box indicating that Towner was unable to tolerate, with positional changes and meal breaks, seeing for any portion of the work day and, in response to "Estimated Return to Work," stated "indefinite/permanently disabled." Id. at CIG0081-83. Dr. Famligietti also included in his submission to CIGNA the letter that he had sent to the Social Security Administration regarding Towner's vision.

Towner returned a completed "Disability Questionaire," in which he provided information about his daily life and indicated, in a series of checkboxes and fill-in spots, the number of hours that he spent doing different activities on a weekly basis.  Id. at CIG108.  Towner indicated that he cooks one hour per day, twice a week (two hours total); cleans one hour per day, five days a week (five hours total); shops two hours per day, once a week (one hour total); does laundry three hours per day, once a week

4

(three hours total); does yard work two-three hours per day, twice a week (four to six hours total); watches television five hours per day, seven days a week (thirty-five hours total); and "other" for two hours per day, five days a week (ten hours total).  Id.  Towner did not check the box to indicate that he engages in reading as an activity, although he did indicate that he uses a "lighted magnifier" to read.  Id.  Towner also indicated that he uses a home computer for two hours per week.  Id.  In a separate declaration submitted with his benefits appeal to CIGNA, Towner stated that his home computer use consisted of one 15-20 minute sitting each day, or several shorter sittings, in which he checked his email, visiting a media website, or monitored his bank account balance.  Id. at CIG0058.   Towner also sent to CIGNA a copy of his driver's license which showed that he was approved to drive during daylight hours.  Id. at CIG0168.

On December 19, 2003, CIGNA requested that Dr. Familglietti send to it copies of his notes and test results from July 2003 to the date of the request.  Dr. Familgietti responded that Towner has only visited once during that period, on November 12, 2003, and he sent to CIGNA his notes from that visit.  Subsequently, CIGNA asked an "associated medical doctor," Dr. Seiferth, to examine the information submitted on behalf of Towner's claim.  Dr. Seiferth's notes indicate that he did not find that the medical evidence supported the conclusion that Towner's disability precluded him from doing his job.  Id. at CIG0145.

On December 29, 2003, CIGNA sent Towner a written denial of his LTD benefits claim. The denial listed some of the findings of Dr. Famliglietti, and stated, in part:

> Dr. Famijlietti [sic] completed a Physical Abilities Assessment indicating that you are physically capable of performing heavy duties.  Your occupation as defined by the National Economy is classified as sedentary

5

duty levels.  The Disability Questionnaire provided by you on December 8, 2003 states that your vision is well enough for you to drive in the daytime and use your home computer.  The medical information provided by Dr. Famijlietti [sic] supported your treatment for ocular atrophy and nystagmus, but does not indicate that you are restricted in your activities as a Report Writer.  We are not stating that you may not have some visual problems as a result of your condition, rather, we have not been provided with medical documentation to support an impairment of functional capacity severe enough to affect your ability to work.

Id. at CIG0075.  The denial letter also informed Towner of his right to appeal the decision, as well as his ability to submit additional information in support of his appeal.

On March 25, 2004, Towner's counsel wrote to CIGNA to request a copy of Towner's claim file, a copy of the Summary Plan Description ("SPD") for the Pfizer LTD Plan, as well as other relevant documents.  Id. at CIG0131-36.  CIGNA acknowledged its response of Towner's request on March 31, 2004, and requested an written authorization to release information by Towner to Towner's counsel.  Id. at CIG0128.  According to Towner, his counsel returned the signed release, but CIGNA never sent the requested documents.  Complaint, ¶ 54; Pl's Memo. in Opp. to Def's Mot. for Sum. Judg., p. 18 [Doc. No. 32].

On June 9, 2004, Towner filed an appeal of the LTD benefits denial.  In addition to a brief prepared by his counsel, Towner, in support of his appeal, submitted a declaration from Towner describing the effect of his medical conditions on his "close-up vision" as well as his home computer usage, information from the Internet regarding congenital nystagmus and ocular atrophy, the job performance reviews from Towner's employment with Pfizer, and notice of his award of benefits from Social Security.  Id. at CIG0039-CIG0108.

On June 15, 2004, CIGNA, by letter, informed Towner that it was in receipt of his

6

appeal, that he would be notified of the status or a decision within thirty days, and that, if additional time was needed, he would be notified of the reason for the delay. Id. at CIG0121. On June 29, 2004, CIGNA again wrote to Towner, informing him that he could submit additional information. Id. at CIG0116-17. Towner did not submit any additional information. On July 15, 2004, CIGNA wrote to Towner to inform him that it was having his claim evaluated by a health care professional and that it hoped to make a decision within thirty days.

On September 8, 2004, Towner's counsel wrote to CIGNA, noting that CIGNA had not made a decision by the deadline established under Department of Labor regulations, and informing CIGNA that Towner intended to file suit against CIGNA.

On September 15, 2004, an associated medical doctor evaluated Towner's claim on behalf of CIGNA. The doctor noted that Towner has congenital optical atrophy and nystagmus and concluded, on the basis that Towner had 20/70 vision, was able to drive during the day, and was able to use his home computer with the assistance of a magnifier, that there was no medical evidence showing that Towner was not impaired from working as a report writer. Id. at CIG0114.

On September 28, 2004, CIGNA sent Towner a written denial of his appeal which noted the reasons for denial listed by the associated medical doctor. Towner initiated this lawsuit on October 19, 2004, asserting claims under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), for wrongful denial of benefits; under ERISA section 104(b)(4), 29 U.S.C.A. § 1024(b)(4), for failure to provide requested plan documents, and under ERISA section 502(g)(1), 29 U.S.C. § 1132(g), for attorney's fees and costs.

II.     **LEGAL STANDARD**

Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Hermes Int'l v. Lederer de Paris Fifth Ave, Inc., 219 F.3d 104, 107 (2d Cir. 2000). The moving party bears the burden of showing that no genuine factual dispute exists. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994)). "A fact is 'material' for these purposes when it might affect the outcome of the suit under the governing law."  Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005)(quotation marks omitted).  When reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury.  Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986), and present such evidence as would allow a jury to find in his favor, Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).  A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a Summary Judgment Motion."  Lipton v. The Nature Company, 71 F.3d 464, 469 (2d Cir. 1995) (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986)).  Additionally, a party may not rest on the "mere allegations or denials" contained in his pleadings.  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995); see also Ying Jing Gan v. City of New York, 996 F.2d

8

522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the Summary Judgment Motion are not credible).  Moreover, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Jeffreys, 426 F.3d at 554.

Towner has moved for judgment on the administrative record, and CIGNA has moved, in the alternative, for judgment on the administrative record.  In an ERISA action, A "decision on the motion for judgment on the administrative record ... can best be understood as essentially a bench trial 'on the papers' with the District Court acting as the finder of fact." Muller v. First Unum Life Ins. Co., 341 F.3d 119, 125 (2d Cir.2003); see also Slupinksi v. First UNUM Life Ins. Co., No. 99-CIV-0616(TPG), 2005 WL 238552, at *5 (noting that the Federal Rules of Civil Procedure do expressly authorize such a motion, recognizing that the Second Circuit has approved of treating such a motion both as a bench trial and as a motion for summary judgment, and finding that the "most appropriate characterization of this kind of proceeding is as a bench trial under Fed.R.Civ.P. 52 in accordance with Muller.").

## III.   DISCUSSION

### A.   Denial of LTD Benefits

#### 1.   Standard of Review

Count One of Towner's complaint asserts a claim for wrongful denial of benefits under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).  Towner and CIGNA contest the standard of review that the court should adopt in reviewing CIGNA's actions.  Towner contends that the court should review CIGNA's decision de novo, while CIGNA contends that the more deferential arbitrary and capricious standard

9

should apply.  "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  "When an employee benefit plan grants a plan fiduciary discretionary authority to construe the terms of the plan, [t]he court may reverse only if the fiduciary's decision was arbitrary and capricious."  Rombach v. Nestle USA, Inc., 211 F.3d 190, 194 (2d Cir. 2000) (quoting Miller v. United Welfare Fund, 72 F.3d 1066, 1070 (2d Cir. 1995)) (internal quotation marks omitted).  "The plan administrator bears the burden of proving that the arbitrary and capricious standard of review applies, since 'the party claiming deferential review should prove the predicate that justifies it.'"  Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 249 (2d Cir. 1999)(quoting Sharkey v. Ultramar Energy Ltd., 70 F.3d 226, 230 (2d Cir. 1995)).

Here, it is undisputed that the Pfizer LTD plan vested CIGNA with discretionary authority.  It is also undisputed that CIGNA did not render its decision on Towner's appeal in a timely fashion.  Pursuant to the regulations promulgated by the Department of Labor under sections 503 and 505 of ERISA, a plan administrator initially has 45 days in which to decide an appeal of a denial of disability benefits.  29 C.F.R. § 2560.503-1(i)(1)-(3).  A plan administrator may also extend the period of time by sending the claimant a written notice that includes an explanation of the "special circumstances" requiring an extension.  Id.  Towner filed his appeal on June 9, 2004.  In its July 15, 2004, letter, CIGNA stated that it would require an additional 30 days to decide Towner's claim because it needed a medical professional to review the information on file.  Thus, as both parties concede, CIGNA's decision was due August

28, 2004, and its decision on September 28, 2004, was 31 days late.  See Def's Memo. of Law in Opp. to Pl's Mot. for Judg. on the Admin. Rec., p. 13 [Doc. No. 30].

Under a previous version of the Department of Labor's regulations, in which a claim that was not decided pursuant to the regulatory time frame was expressly "deemed denied,"  the Second Circuit held that a "deemed denied" claim was not an exercise of discretion by an administrator, and, thus, not entitled to deferential review. Nichols v. Prudential Ins. Co., 406 F.3d 98, 109 (2d Cir. 2005).  The Department of Labor has since revised its regulations, which now state, somewhat ambiguously, that

> [i]n the case of a failure of a plan to establish or follow claims procedures
>  . . ., a claimant shall be deemed to have exhausted the administrative
> remedies available under the plan and shall be entitled to pursue any
> available remedies under section 502(a) of [ERISA] on the basis that the
> plan has failed to produce a reasonable claims procedure that would yield
> a decision on the merits of the claim.

29 C.F.R. § 2560.503-1(l).  The Second Circuit, and other Circuits in which a "deemed denied" decision was usually held not to be an exercise of discretion, has not determined the impact of this new regulatory language.  Several district courts have held that, because the new regulation no longer expressly provides that out-of-time appeals are "deemed denied," late decisions should not be considered non-discretionary acts, and plans should still receive a deferential standard of review.  See Ott v. Litton Indus., No. 4:04-CV-763, 2005 WL 1215958, at *7 (M.D.Pa.  May 20, 2005); Oman v. Intel Corp. Long Term Disability Benefit Plan, No. 03-1591-AA, 2004 WL 2384965, at *6 (D.Or. Oct. 21, 2004).  However, in enacting the new regulations, the Department of Labor expressly rejected making "good faith compliance . . . the measure for requiring administrative exhaustion," and stated that "[t]he Department's intentions in including this provision in the proposal were to clarify that the procedural

minimums of the regulation are essential to procedural fairness and that a decision made in the absence of the mandated procedural protections should not be entitled to any judicial deference."  65 Fed.Reg. 70246, 20255-56 (Nov. 21, 2000).  While the Department of Labor's intentions regarding the judicial scope of review may not be entitled to Chevron deference, see Seger v. Reliastar Life, No. 3:04-CV-16/RV/MD, 2005 WL 2249905, at *9 (N.D.Fla. Sept. 14, 2005), the court is persuaded that the language of the new regulations does not disturb the holding in Nichols that out-of-time appeal decisions by plans do not normally receive arbitrary and capricious review.

CIGNA argues that, even if a late decision does not normally receive deferential review, CIGNA nonetheless has "substantially complied" with the ERISA regulations and should thus receive deferential review on that basis.  Several Courts of Appeals, not including the Second Circuit, have held that, where a plan has substantially complied with the ERISA regulations, it may still receive deferential review despite being technically non-compliant.  See Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan, 349 F.3d 1098, 1107 (9th Cir. 2003); Gilbertson v. Allied Signal, Inc., 328 F.3d 625, 634-35 (10th Cir. 2003).  In Nichols, the Second Circuit noted the existence of this doctrine in other Circuits but declined to extend it, under the circumstances of the case, to this Circuit.  406 F.3d at 109-110.  Nonetheless, it has been applied by several district courts within the Circuit. See e.g., Giraldo v. Building Service 32B-J Pension Fund, No. 04-CV-3595(GBD), 2006 WL 380455, at *3 (S.D.N.Y. Feb. 16, 2006); Pava v. Hartford Life and Accident Ins. Co., No. 03-CV-2609SLT RML, 2005 WL 20391192 (E.D.N.Y. Aug. 24, 2005).  At least one district court has held that, in light of the Department of Labor's commentary regarding its new regulations, no "substantial compliance" exception should be read into the regulations.  See Reeves v.

UNUM Life Ins. Co., 376 F.Supp.2d 1285, 1293 (W.D.Ok. 2005).

The court need not determine the viability of the substantial compliance doctrine because it finds, under the doctrine, that CIGNA did not substantially comply with its obligations under ERISA.  In Gilbertson, the Tenth Circuit stated that a plan could be in substantial compliance with ERISA despite a delay in producing a final decision where the delay was (1) inconsequential, and (2) "in the context of an good faith exchange of information between the administrator and the claimant."  328 F.3d at 635; see also Finley v.  Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan, 379 F.3d 1168, 1174 (10th Cir. 2004).  The Gilbertson court noted, "an administrator who fails to render a timely decision can only be in substantial compliance with ERISA's procedural requirements if there is an ongoing productive evidence-gathering process in which the claimant is kept reasonably well-informed as to the status of the claim and the kinds of information that will satisfy the administrator."  328 F.3d at 636.

In the instant case, there was no "good faith exchange of information" or "ongoing productive evidence-gathering process" of the type discussed in Gilbertson. After Towner filed his appeal, he received three communications from CIGNA.[3]   The first informed Towner of the receipt of his appeal; the second invited Towner to submitted additional information, which he declined to do, and the third informed Towner that a decision on his appeal would be delayed by thirty days so that the information could be reviewed by a health care professional.  This was not an delay-causing exchange, for example, about the need to have Towner subjected to an

---

[3] CIGNA suggests that its communications with Towner and Towner's counsel prior to Towner's appeal evidence a "good faith exchange of information."  These communications do not, however, demonstrate a reason for the delayed decision and are thus not relevant to the inquiry at hand.

13

independent medical examination.  See e.g., DeGrado v. Jefferson Pilot Financial Insurance Co., 367 F.Supp.2d 1315, 1321 (D.Co. 2005).  Nor can CIGNA's delay be attributed to any tardiness on the part of Towner or an independent medical professional.  See e.g., Pava, 2005 WL 2039192, at *9; Seger, 2005 WL 2249905, at *12.  Notably, CIGNA's in-house medical professional did not review Towner's claim until September 15, 2004, which was eighteen days after the CIGNA's decision was due, and seven days after Towner's counsel notified CIGNA of Towner's intention to file suit.  Accordingly, CIGNA has not demonstrated that it has substantially complied with its obligations under ERISA such that its appeals decision should receive deferential review.[4]  Therefore, CIGNA's appeal decision will be reviewed de novo.[5]

    2.    Towner's Entitlement to Benefits

Under a de novo standard, the court reviews "all aspects of the denial of [the

---

[4]CIGNA argues that its delay should be excused under the holding of Finley, in which the Tenth Circuit found that arbitrary and capricious review is appropriate where the claimant "fails to provide meaningful new evidence or raise significant new issues [on administrative appeal], and the delay does not undermine [the court's] confidence in the integrity of the [the administrator's] decision-making process." 379 F.3d at 1174.  In Finley, the claimant only submitted, in connection with her appeal, a physician's report which was held to be irrelevant because it did not pertain to the correct time period.  Id.  In contrast, Towner submitted, in connection with his appeal, a declaration which described the effects of his medical conditions on his ability to read and provided specifics about his home computer use, information about his medical conditions, and notice of his Social Security benefits determination.  Thus, Towner submitted "meaningful evidence" that renders the exception described in Finley inapplicable.  Moreover, in Raithaus v. UNUM Life Ins. Co., 335 F.Supp.2d 1098, 1115 (D.Haw. 2004), which CIGNA also cites for support, the district court noted that the plan rendered a decision before the end of the "absolute time period" provided for in the plan and in the ERISA regulations.  Here, under the applicable ERISA regulations, CIGNA had a duty to decide Towner's appeal at the latest by September 7, 2004, which it failed to do.  See  29 C.F.R. § 2560.503-1(i)(1)-(3)(appeal decisions must be decided within 90 days).

[5]Having found that CIGNA did not substantially comply with its obligations under ERISA, the court does not reach Towner's assertions regarding CIGNA's alleged conflict of interest.

claim], including fact issues," Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 245 (2d Cir.1999), "to determine for itself whether the claimant should be granted or denied the requested relief." Elsroth v. Consolidated Edison Co. of New York, 10 F.Supp.2d 427, 434 (S.D.N.Y.1998) (citing DeFelice v. American Int'l Life Assurance Co. of N.Y., 112 F.3d 61, 65 (2d Cir.1997)); see Lijoi v. Continental Cas. Co., No. 04-CV-1488  2006 WL 322229, at *8 (E.D.N.Y. May 31, 2006).

At issue is Towner's eligibility for LTD benefits under the terms of the Pfizer LTD Benefit Plan at the time that Towner applied for benefits.  Under the terms of the Pzifer LTD Benefit Plan,

> An employee is Disabled if, because of Injury or Sickness,
> 1.      he or she is unable to perform all the material duties of his or her regular occupation; and
> 2.      after Monthly Benefits have been payable for 24 months, he or she is unable to perform all material duties of any occupation for which he or she may reasonably become qualified based on education, training, or experience.

Def's 56(a)(1) Statement, CIG0216.  The plan also states that, to receive disability benefits, a plan participant must provide to the Insurance Company, at his or her own expense, satisfactory proof of Disability before benefits will be paid."  Id. at CIG0224.

The court concludes, on the basis of the evidence in the administrative record, that Towner has submitted to CIGNA satisfactory proof of his disability, as defined in the Plan, and is thus entitled to receive LTD benefits.  See Kinstler, 181 F.3d at 252 (finding "satisfactory proof" to establish an objective standard).  The statements and objective evidence included in the submissions prepared by Dr. Famliglietti support a finding of disability.  In particular, Dr. Famiglietti's objective findings as to the state of Towner's visual acuity, ocular motility, and peripheral visual field loss, which are noted in the October 30, 2003 letter to the Social Security Administration (and which letter

15

was also included in Towner's initial benefits application), support his conclusions regarding the extent of disability experienced by Towner as well as his statements that Towner is not able to perform  his occupation of TK report writer. Def's Rule 56(a)(1) Statement, CIG0078-86.  While the court does not give Dr. Famiglietti's opinion any special deference as a matter of law, see Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825 (2003), the court notes that Dr. Famiglietti is a board-certified ophthalmologist (or, at least, represents himself as such on his letterhead), examined Towner on many occasions in 2002 and 2003, and is the only medical professional to have personally examined Towner in the course of his application for disability benefits. See Karanda v. Conn. Gen. Life Ins. Co., 158 F.Supp.2d 192, 205 n.8 (D.Conn. 2000)("In determining whether to give a treating physician's opinion substantial weight over a non-treating physician's opinion, a court should weigh the following factors: "(1) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; (v) other relevant factors.").  In addition, the court notes, CIGNA has not produced any objective medical evidence that contradicts or calls into question the test results obtained by Dr. Famiglietti.

In addition, the declaration submitted by Towner in support of his appeal supports his claim of disability.  In his declaration, Towner describes how his vision has degenerated over time and how his cataract operations had the effect of improving his

16

distance vision at the expense of his "close-up" vision.[6]   Def's Rule 56(a)(1) Statement, CIG0057.   The administrative record reveals that CIGNA employed the job classification of "statistician" in evaluating the physical demands of Towner's occupation.  Id. at CIG0169-70. CIGNA's description of the physical demands for a statistician list "frequently" for "near acuity" and "never" for "far acuity.  Id.  Thus, under the job classification provided by CIGNA, the evidence submitted by Towner supports the conclusion that he cannot perform the material duties of his regular occupation. While the evidence suggests that Towner could possibly perform a "heavy," i.e., non-sedentary occupation, Towner's education, training, and experience are not consistent with such occupations.  Accordingly, Towner is thus disabled as the term is defined in the Pfizer LTD Plan.

The court also notes that a finding of disability under the terms of the Pfizer LTD Plan would be consistent with the finding of disability, based on the same evidence, by the Social Security Administration under the standard established by 42 U.S.C. § 423. See Neely v. Pension Trust Fund of the Pension, Hosp. and Benefit Plan of the Elec. Indus., No. 00 CV 2013(SJ), 2004 WL 2851792, at *11 (E.D.N.Y. Dec. 8, 2004)(holding that a Social Security benefits determination is evidence that must be considered by a plan administrator in evaluating a claim for long term disability benefits).  While the grant of Social Security benefits to Towner cannot be determinative of Towner's claim under the Pfizer LTD Benefits Plan, it is "one piece of evidence" in support of Towner's

---

[6]CIGNA specifically informed Towner, in its initial denial decision, that he could submit, in support of an appeal, "examples of how your activities of daily living are restricted or impaired, and any other medical evidence that you believe supports your claim."   Def's Rule 56(a)(1) Statement, CIG0075.

claim.  See Billinger v. Bell Atlantic, 240 F.Supp.2d 274, 285 (S.D.N.Y. 2003).   On the

basis of the foregoing evidence, Towner has demonstrated satisfactory proof of his

entitlement to LTD benefits under the Pfizer Plan.

CIGNA argues that Dr. Famliglietti's conclusions, and Towner's statements, are

unreliable, and thus do not support a finding of disability, in light of what it asserts are

"contradictions" and "admissions" included in Dr. Famliglietti's and Towner's statements

in the administrative record.  CIGNA's characterization of the evidence, and its

consequences for Towner's claim, is incorrect and do not demonstrate that Towner's

claim of disability is insufficient.

CIGNA argues that Towner's representations about his daily activities on the

Disability Questionnaire "directly contradict" the conclusions reached by Dr. Famliglietti.

Def's Mem. in Opp., p. 7.  Specifically, CIGNA argues that Towner's extensive TV

viewing (35 hours a week), his use of a home computer (2 hours a week, in 15-minute

daily intervals), and his ability to drive during the daytime, demonstrate the lack of

medical evidence to support his disability claim.  This evidence was the basis for the

conclusions of the medical professionals that evaluated Towner's claim on behalf of

CIGNA.[7]  See Def's Rule 56(a)(1) Statement, CIG00145, CIG00114.

However, this evidence does not necessarily support the conclusions that CIGNA

attempts to draw from it, especially in light of all of the information submitted by Towner

in support of his claim.  It may be the case, but it is not necessarily so, that someone

---

[7]CIGNA's medical professionals also noted that Towner's vision was 20/70 in
concluding that the medical evidence does not support Towner's claim.  Def's Rule 56(a)(1)
Statement, CIG00145, CIG00114.

who is able to watch television is also able to perform eight hours of work at a computer daily, and it may be the case, but it is not necessarily so, that someone who can perform some daily tasks with a computer can perform the full-time tasks required by the occupation of report writer.  To conclude that Towner's statements regarding these activities demonstrate that Towner is able to adequately perform the tasks of his occupation requires that a large number of assumptions be made, both about the general nature of the similarity of the activities that CIGNA chooses to compare, and about Towner's individual ability to engage in these activities in light of his ocular conditions.

Towner attests, in his declaration, to having diminished "close-up" reading ability, but improved distance vision, due to his cataract operations.  Def's Rule 56(a)(1) Statement, CIG0058.  Towner's ability to drive during the day time, and his ability to "watch" television[8] may be consistent with these facts.  Then again, these abilities may not be consistent with his disability, but additional investigation, of a type not performed by CIGNA in evaluating Towner's claim, would be necessary to determine if this is indeed true.  Similarly, that Towner is able to use a computer for some part of the day may suggest that he could use the computer for a much longer period; alternatively, given Towner's undisputed medical conditions, it may be the case that Towner cannot effectively use the computer for longer than the fifteen minute periods that he attests to

---

[8]The court observes that it is quite possible to enjoy the entertainment of television without the visual concentration required by work at a computer, and, indeed, without any visual concentration at all.  The court does not know how exactly Towner "watches" television.  Even so, the possibility that Towner engaged in less-then-focused television viewing negates the ability to conclude, on the basis of Towner's television viewing alone, that Towner has not shown that he is disabled under the terms of Pfizer's Plan.

using it.  Without knowing more, only through assumption and conjecture could CIGNA

conclude that Towner's statements are contradictory and unreliable.  "Although the

burden lies on the claimant to provide proof of disability, speculation or assumption on

the part of the administrator is insufficient to overcome a conflicting medical opinion."

Karanda, 158 F.Supp.2d at 205 (citing Miller v. United Welfare Fund, 72 F.3d 1066,

1073 (2d Cir. 1995)).  While these conclusions were reached by medical professionals

on behalf of CIGNA, the record on which their conclusions were based does not provide

a factual basis for the assumptions that are necessary to support their judgments.[9]

CIGNA also argues that Towner's statements regarding his activities "completely

undermine" the conclusions reached by Dr. Famiglietti, especially because Dr.

Famiglietti "did not have knowledge of Plaintiff's daily activities."  Def's Mem. in Opp., p.

5.  For the reasons discussed above, this is not the case.  Contrary to CIGNA's

characterization, Dr. Famiglietti did not conclude that Towner could see for "0 hours" of

the day, or that Towner is "100% disabled in each eye."  Id. at 3, 5; Def's Rule 56(a)(1)

Statement, CIG083, CIG086.  Reading Dr. Famiglietti's statements in the contexts in

which they are presented, he only stated, on the Physical Assessment Form, that

Towner, "in an 8 hour workday," can "tolerate, with positional changes and meal breaks"

seeing for "0 hrs.", and, in his letter to the Social Security Administration, that the

objective findings regarding Towner's vision "translates to essentially 100% visual

disability . . . by standard disability tables according to the American Medical

_____

[9]Similarly, the isolated fact that Towner has 20/70 corrected vision is not necessarily
compelling evidence of Towner's lack of disability when viewed in the context of the other
objective results noted by Dr. Famiglietti.

Association." Id.  Despite CIGNA's characterizations, these statements do not represent that Towner cannot see at all.  Accordingly, they are not inconsistent with the information that Towner provided to CIGNA.  Moreover, while Dr. Famligietti was not in possession of Towner's Disability Questionnaire, neither CIGNA nor the court is not in a position to know whether Dr. Famligietti had knowledge of Towner's daily activities.  The court notes that Dr. Famligietti was Towner's treating physician, and he saw Towner eleven times prior to submitting his Physician's Statement in support of Towner's initial application for benefits.  The court therefore does not find that the medical evidence submitted by Towner and Dr. Famligietti is unreliable and non-satisfactory for the reasons argued by CIGNA.

For the forgoing reasons, the court concludes that Towner has submitted satisfactory proof demonstrating that he is entitled to LTD benefits under the definition of disability employed in the Pfizer LTD Benefits Plan.  Towner's motion for judgment on the administrative record on Count One of his complaint is GRANTED, and CIGNA's motion for summary judgment on Count One of Towner's complaint is DENIED.

Pursuant to ERISA section 502(a)(1)(B), 29 U.S.C. § 1132, Towner may recover the benefits due to him under the terms of the Pfizer Plan.  The parties are directed to confer on the amount of benefits due to Towner under the terms of the Pfizer Plan and inform the court of the agreed-upon amount.  If the parties cannot reach an agreement as to the amount of benefits due Towner under the Plan, Towner is directed to brief the court on his claim for benefits, and whatever other remedies Towner seeks, within 21 days of the entry of this order, followed by briefing by CIGNA pursuant to the Local Rules.

**B.      Failure to Provide Requested Plan Document**

In his second cause of action, Towner asserts a cause of action under ERISA section 104(b)(4), 29 U.S.C. § 1124(b)(4), and section 502(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B),  against CIGNA for failure to provide a copy of the Pfizer LTD Plan SPD in response to Towner's March 25, 2004 request.  section 104(b)(4) provides that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description . . . ."  Courts in this circuit have interpreted section104(b)(4) to impose liability only on <u>plan</u> administrators, in contrast to other plan fiduciaries.  <u>See</u> <u>Klecher v. Metropolitan Life Ins. Co.</u>, No. 01-CIV-9566(PKL), 2003 WL 21314033, at *8 (S.D.N.Y. June 6, 2003)(citing cases, finding claims administrator not liable under sections 104(b)(4) and 502(c)(1) because those sections only impose duties on plan administrators); <u>see also</u> <u>Bergquist v. Aetna U.S. Healthcare</u>, 289 F.Supp.2d 400, 413 (S.D.N.Y. 2003)("[L]iability under [§ 1132(c) ] is clearly limited to plan 'administrators.'"); 29 C.F.R. § 2520.104b-1(b)(1)("[T]he <u>plan</u> administrator shall use measures reasonably calculated to ensure actual receipt of the material by plan participants . . . .")(emphasis added).  It is undisputed that the SPD for the Pfizer LTD Plan designates Pfizer as the plan administrator and CIGNA as the claim administrator.  Thus, CIGNA cannot be liable under sections 104(b)(4) and 502(c)(1)(b) of ERISA for failure to send Towner the requested SPD.  <u>See</u> <u>Klecher</u>, 2003 WL 21314033 at *8 (finding that an SPD designating a plan administrator is an instrument under which the plan is operated for purposes of 29 U.S.C. § 1002(16)(A)(I)).

In his pleadings, Towner attempts to include in this claim allegations concerning

22

CIGNA's failure to send documents other than the SPD to Towner.  These assertions were not included in his complaint, and they are not actionable under section 104(b)(4) of ERISA, which is the statute which gives rise to the second claim in Towner's complaint.  These claims may not be presented for the first time in Towner's motion for judgment on the administrative record.  See Allen v. West Point-Pepperell, Inc., 908 F.Supp. 1209, 1224 (S.D.N.Y. 1995)("A motion for summary judgment is not the appropriate place to present new claims which effectively amend the complaint.").  Accordingly, CIGNA's motion for summary judgment on Count Two of Towner's complaint is GRANTED, and Towner's motion for judgment on the administrative record on Count Two of his complaint is DENIED.

### C.    Towner's Claim for Attorney's Fees and Costs

In Count Three of his complaint, Towner asserts a claim for attorney's fees and costs, pursuant to ERISA section 502(g)(1), 29 U.S.C. § 1132(g).  Under 29 U.S.C. 1132(g)(1), the court in its discretion may allow a reasonable attorney's fee and costs to either party.  The decision of whether to award fees is discretionary.  Mendez v. Teamsters Ins. & Annuity Association, 982 F.2d 783, 788 (2nd Cir. 1992).  The Second Circuit has set forth factors for a court to consider in deciding whether to award fees to a prevailing party in an ERISA action.  Id. at 788.

The factors are:

(1) the degree of the offending party's culpability or bad faith
(2) the ability of the offending party to satisfy an award of attorney's fees,
(3) whether an award of fees would deter other persons from acting similarly under like circumstances,
(4) the relative merits of the parties' positions, and
(5) whether the action conferred a common benefit on a group of pension plan participants.

Chambless v. Masters, Mates & Pilots Pension Plan, 815 F.2d 869, 871 (2d Cir. 1987).

In the instant case, the court finds that the evidence in the administrative record does not support an award of fees to Towner.  While CIGNA is likely able to satisfy an award of attorney's fees, and while the court has found that Towner has prevailed on his claim for benefits, the other factors (i.e., the first, third, and fifth) factors weigh in favor of CIGNA.  Notably, the administrative record does not evidence bad faith or culpability on the part of CIGNA, nor particular behavior which would warrant a need for deterrence.

Accordingly, the court declines to award attorneys' fees and costs to Towner pursuant to ERISA section 502(g)(1).  CIGNA's motion for summary judgment on Count Three of Towner's complaint is GRANTED, and Towner's motion for judgment on the administrative record on Count Three of his complaint is DENIED.

IV.    CONCLUSION

For the foregoing reasons, the defendant's summary judgment motion, and its motion, in the alternative, for judgment on the administrative record [Doc No. 23] is GRANTED as to Counts Two and Three of the plaintiff's complaint, and DENIED as to Count One of the plaintiff's complaint.  The plaintiff's motion for judgment on the administrative record [Doc. No.26] is GRANTED as to Count One and DENIED as to Counts Two and Three of his complaint.  The plaintiff is entitled to long term disability benefits under the terms of the Pfizer Long Term Disability Plan.

The parties are directed to confer on the amount of benefits due to Towner under the terms of the Pfizer Plan and inform the court of the agreed-upon amount.  If

the parties cannot reach an agreement as to the amount of benefits due Towner under the Plan, Towner is directed to brief the court on his claim for benefits, and whatever other remedies Towner seeks, within 21 days of the entry of this order, followed by briefing by CIGNA pursuant to the local rules.

**SO ORDERED.**

Dated this 7th day of March, 2006, at Bridgeport, Connecticut.

/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge